PER CURIAM.
This case is before this Court on petitions for the writ of certiorari. Johnnie Mae Alexander Green, Lillie Robinson, Oscar C. Alexander, Bertha Mae Humphery, Shirley Alexander, Cathy Alexander, Johnny Alexander, Jr., and Althea Alexander (hereinafter referred to collectively as “the Greens”) (case no. 1071195) and E’Stella Alexander Webb Cottrell (case no. 1071204) petitioned this Court for review of that portion of the opinion of the Court of Civil Appeals reversing the judgment of the trial court insofar as it quieted title to certain real estate in the Greens and Cott-rell (hereinafter referred to collectively as “the plaintiffs”) and remanding the case to the trial court to enter a judgment quieting title in that real estate in the heirs of Larenda Jenkins. Stokes v. Cottrell, 58 So.3d 123 (Ala.Civ.App.2008). In addition, Cottrell seeks reversal of the opinion of the Court of Civil Appeals insofar as it affirms the trial court’s judgment awarding certain other real estate to Jenkins’s heirs.
In cases no. 1071195 and 1071204, we vacate the portion of the opinion of the Court of Civil Appeals reversing the trial court’s judgment. We quash the petition in ease no. 1071204 insofar as it asks us to decide whether the Court of Civil Appeals erred in affirming the trial court’s judgment quieting title to a portion of the disputed property in “the heirs of Larenda Jenkins.” We remand the case to the Court of Civil Appeals for further proceedings consistent with this opinion.

Facts and Procedural History

This case concerns a dispute over the rightful ownership of approximately 270 acres of real property formerly owned by Estelle Haggerty Alexander (“Estelle”), who died in 1962 without a spouse or children. The Court of Civil Appeals summarizes the facts of this case as follows:[1]
“During her lifetime, Estelle owned six parcels of land located in Elmore County in the vicinity of Rifle Range Road and Dozier Road. In the complaint to quiet title, the parcels were identified as ‘parcel 1,’ consisting of approximately 100 acres for which Estelle had a deed of record in her name; ‘parcel 2,’ consisting of approximately 11 acres; ‘parcel 3,’ consisting of approximately 4.3 acres; ‘parcel 4,’ consisting of approximately 24 acres; ‘parcel 5,’ con *138 sisting of approximately 52 acres; and ‘parcel 6,’ consisting of approximately 79 acres. No deed of record was produced for parcels 2 through 6. The parties stipulated that Estelle owned all six parcels at the time of her death.
“During her lifetime, Estelle lived on a portion of parcel 1, the 100-acre tract of land. Also during her lifetime, Estelle took in two infants — Cottrell and Johnny [Alexander] Sr. — whom she raised to adulthood. Cottrell and Johnny Sr. were not related by blood to Estelle or to each other, and Estelle did not legally adopt them. However, at some point before her death, Estelle had a house built for Johnny Sr. and his wife on parcel 1. Cottrell lived in Estelle’s house.
“Estelle died in 1962; she left no will. She was buried on parcel 1 alongside her husband. Following Estelle’s death, both Cottrell and Johnny Sr. continued living on the property. Cottrell continued living in Estelle’s house, while Johnny Sr., his wife, Johnnie Mae [Alexander] Green, and their children continued living in the house that Estelle had had built for them on parcel 1.
“After Estelle’s death in 1962, the El-more Probate Court appointed Larenda Jenkins, Estelle’s cousin and only living relative by blood, as the administrator of Estelle’s estate.[2] Johnny Sr. and Cott-rell each filed claims against Estelle’s estate in amounts of $7,500 and $5,000, respectively, for personal services rendered to Estelle during her lifetime. Johnny Sr. also challenged Jenkins’s appointment as administrator; he filed an action seeking to have himself named as the administrator as the estate’s largest creditor.
“A third party also challenged Jenkins’s appointment as administrator, and the matter was removed to the circuit court. After a hearing in 1963, the challenges to Jenkins’s appointment as administrator were dismissed. Although Johnny Sr. voluntarily dismissed his petition, the order resulting from the circuit court’s 1963 hearing also recognized that the challenges filed to Jenkins’s appointment as administrator were ‘not well taken’ and were ‘denied.’ That order also declared that Jenkins was the administrator of Estelle’s estate. No appeal was taken from that order.
“Cottrell moved away from the property in approximately 1964 or 1965 and never reestablished a residence thereon. In 1965, Cottrell and Johnny Sr. filed a complaint, alleging that, during her lifetime, Estelle had purchased the six parcels [ 2 ] of land for their benefit and that, at the time of Estelle’s death, the property was being held in a constructive trust for them.[3] In that complaint, Johnny Sr. and Cottrell acknowledged that they were not Estelle’s biological or adoptive children.
“During the pendency of that 1965 action, Jenkins died intestate; at the time of her death, Jenkins had not closed Estelle’s estate. Johnnie Mae Stokes, Jenkins’s granddaughter, was then named as the administrator of Estelle’s estate. Cottrell and Johnny Sr.’s ‘constructive trust’ action was subsequently dismissed for lack of prosecution.
“Johnny Sr. died in 1988; he was buried alongside Estelle. At the time of his death, Johnny Sr.’s wife and several of his children were still living on the property.
*139 “Johnnie Mae Stokes, as the administrator of Estelle’s estate, paid the property taxes due on the six parcels; the taxes were assessed in the name of the ‘estate of Estelle Haggerty Alexander.’ Also during Johnnie Mae Stokes’s administration of Estelle’s estate, she leased to third parties the property held in Estelle’s estate. The record contains a copy of a 1991 lease entered into by Johnnie Mae Stokes with E.B. Calloway. That lease provided:
“ ‘For the sum of $700.00 for 1991 rent, I, Johnnie Mae Stokes, agree to lease E.B. Calloway all the farming and cotton acreage land of Larenda Jenkins and Estelle Alexander, south of the Rifle Range Road and north of the Rifle Range [Road] joining the Griffin land for the sum of $700.00. We reserve the rights to fish and hunt on said property, my family and the family of Johnny Alexander with hunting and fishing rights going to E.B. Calloway south and north of the Rifle Range [Road]. If this land is sold before the year is out, E.B. Calloway will be given the needed time to gather his crop.’
“Another such lease for the year 1993, this one between Johnnie Mae Stokes and Colvin Davis, was introduced into evidence; the 1993 lease differed from the 1991 lease only in the names of the parties involved and the amount of rent charged for the lease.
“Frank Stokes, Jr., Johnnie Mae Stokes’s son, testified that, although other leases could not be located, Johnnie Mae Stokes had leased the property to Calloway and then to Davis repeatedly and continuously during her administration of the estate. Also, according to Oscar Alexander, Johnny Sr. was aware that, during Johnny Sr.’s lifetime, a third party was leasing the property. Oscar believed that the administrator of Estelle’s estate, Johnnie Mae Stokes, was responsible for the leases of the property. Because Johnny Sr. died in 1988, it appears that Johnnie Mae Stokes leased the property even before 1991.
“Johnnie Mae Stokes died intestate in 1996 without having formally closed Estelle’s estate. Although Frank Stokes, Jr., was never appointed administrator of Estelle’s estate, he took over the handling of Estelle’s estate. He paid the taxes due on the property and he continued to enter into farming, hunting, and fishing leases pertaining to the property with Colvin Davis until Davis’s death. At that point, Stokes began entering into leases for the use of the property with Colvin’s son, Reese Davis.
“In 2002, Cottrell and Oscar Alexander filed a petition, asking the probate court to appoint them as coadministra-tors of Estelle’s estate. In that petition, Cottrell and Oscar Alexander, one of Johnny Sr.’s sons, claimed that they were the daughter and grandson of Estelle, that the estate was open, and that no administrator existed. Cottrell and Oscar also claimed that, other than the ... plaintiffs, they knew of no other heirs to Estelle’s estate. Cottrell and Oscar did not identify the heirs of Lar-enda Jenkins as Estelle’s kin and heirs at law. Cottrell and Oscar were appointed coadministrators on May 22, 2002.
“At some point in 2003, Frank Stokes, Jr., entered into another lease with Reese Davis, granting Davis the right to farm, hunt, and fish on the property in Estelle’s estate. However, because a lawyer representing the ... plaintiffs contacted Davis and instructed him not to plant his crop that year, no crops were planted in 2003. Stokes did not *140 enter into any subsequent leases because of this litigation.
“In April 2003, the ... plaintiffs entered into an agreement to sell the property in Estelle’s estate to a third party, A judgment was entered by the probate court on August 7, 2003, identifying the ... plaintiffs as Estelle’s heirs at law and approving the final settlement of Estelle’s estate proposed by the ... plaintiffs. There is no indication in the record that any of the pleadings filed in this 2002 probate action were ever served on the heirs of Larenda Jenkins.
“On July 24, 2003, the ... plaintiffs filed this action in the Elmore Circuit Court (‘the trial court’) to quiet title to the land owned by Estelle’s estate. The ... plaintiffs alleged that they held color of title to the property because Johnny Sr. and Cottrell were Estelle’s children and that, therefore, they were Estelle’s next of kin; the ... plaintiffs also alleged that they had been determined to be Estelle’s hems at law in conjunction with the 2002 administration of Estelle’s estate. That complaint was subsequently amended to assert title to the property by adverse possession and to acknowledge that none of the ... plaintiffs were Estelle’s blood relatives.4
“Subsequent to the filing of the quiet-title action, Oscar Alexander sold the rights to cut timber on some unspecified portion of the property to a third party. In June 2005, Lillie Robinson entered into a hunting lease with a third party, granting this third party the right to hunt on ‘150 acres’ of the property. All of these possessory acts occurred after the filing of their quiet-title action.
“In April 2006, Frank Stokes, Jr., petitioned the probate court to vacate its orders appointing Cottrell and Oscar Alexander as coadministrators of Estelle’s estate and declaring the ... plaintiffs to be Estelle’s heirs at law. Stokes also sought a restraining order to prevent the ... plaintiffs from selling, transferring, conveying, wasting, or consuming the lands and assets on the lands. On April 26, 2006, the probate court vacated all orders and findings from the 2002 probate proceeding.5 Shortly before the trial in the quiet-title action, Stokes sought to amend his answer and to assert a counterclaim, asking the court to quiet title to the property in the heirs of Larenda Jenkins; the trial court, however, denied Stokes’s motion to amend.
2 Under the probate law in effect at the time of Estelle’s death, Title 61, § 81, Ala. Code 1940 (Recomp. 1958), the next of kin entitled to share in the decedent’s estate was given priority for the position of administrator if no spouse survived the decedent. If no next of kin entitled to share in the estate could be identified, the largest creditor was to be named as administrator of the decedent’s estate.
3 Cottrell was a minor at the time this complaint was filed, and, thus, it was filed by and through her father, as her best friend.
" 4 After a family dispute arose between Cottrell and the remaining ... plaintiffs, Cottrell retained separate counsel.
" 5 At this point in the litigation, Cottrell obtained separate counsel to represent her in the action to quiet title.”
Stokes, 58 So.3d at 125-28.
On November 1, 2006, the trial court entered a pretrial order bifurcating the trial of the quiet-title action follows:
“[T]he Court determines that judicial economy will best be served by bifurcating the trial of this case so as to postpone, for the time being, the trial of those issues in which the interests of Plaintiff Cottrell would be adverse and in conflict with the interests of the heirs of Johnnie Alexander. Accordingly, the Court will proceed, on November 1, 2006, as follows:
“1. The Court will try the issue of whether the plaintiffs can establish *141 that they are in peaceable possession of the property sufficient to allow them to maintain an action to quiet title.
“2. Assuming plaintiffs can establish peaceable possession of the property in question, the burden will then shift to the Defendant, Frank Stokes, Jr., to show legal title to the property. The issue of Defendant’s legal title to the property will be tried on November 1, 2006.
“3. Assuming that the Defendant is able to show legal title to the property, the burden will then shift back to plaintiffs to show superior legal title by adverse possession. If the Court reaches the question of whether plaintiffs can show superi- or title by adverse possession, the Court will receive evidence on the issue of adverse possession and make a determination as to what portion of the property, if any, is under the adverse possession of the plaintiffs. If the Court finds that some or all of the plaintiffs have established title to some or all of the subject property by adverse possession, the Court will make that finding. The Court will not, however, at the November 1, 2006, hearing, attempt to make any allocation of the property among the various plaintiffs. The resolution of those legal and factual issues that will ultimately determine how any portion of the property being adversely possessed will ultimately be divided among the plaintiffs will be reserved for a later hearing.... For now, however, the Court will not attempt to make any allocation among the plaintiffs of any property found to be under adverse possession. Any decision as to how property under adverse possession (if any is found to be) shall be divided among the plaintiffs will be reserved until a later time.”
The case then proceeded as follows:
“The ... plaintiffs’ quiet-title action was heard at a bench trial conducted in December 2006 and January 2007. The parties stipulated to the specific property at issue and stipulated that the property at issue belonged to Estelle in fee simple at the time of her death. Testifying at the hearing were Oscar Alexander; Fred Gray, the attorney who [had] represented Jenkins in connection with the administration of Estelle’s estate; Johnny Jr.; Cottrell; Clifford Thomas, who knew Estelle; Christopher Cairns, an independent property appraiser who had examined the property at issue; Frank Stokes, Jr.; and Reese Davis, Jr., who had leased the land from Stokes.
“It was undisputed that Cottrell and Johnny Sr. had lived on the property beginning before Estelle’s death in 1962. No one disputed that Cottrell and Johnny Sr. lived on the property with the permission of Estelle during her lifetime. Testimony was also presented tending to indicate that, after Estelle’s death, Cottrell and Johnny Sr. remained on the property with the permission of the administrator of Estelle’s estate. However, the ... plaintiffs disputed that testimony.
“Finally, the trial court received copies of the 1991 and 1993 lease agreements executed by the administrator of Estelle’s estate, in which the administrator leased the entire property to third parties for farming, hunting, and fishing. However, in those leases, the administrator specifically reserved the right of the ... plaintiffs to hunt and fish on the land.
*142 “Testimony from the ... plaintiffs established that they were aware that Jenkins and the Stokeses had repeatedly leased the property to third parties. The ... plaintiffs admitted that the crops planted by the lessees were readily visible on the three farmed parcels; one of the ... plaintiffs also acknowledged that the leases granted the lessees the right to use all the property. Additionally, one of the lessees, Reese Davis, testified that, while on the property, he had run into Johnny Jr. Davis testified that Johnny Jr. had never questioned Davis’s right to be on the property and had never asked him to leave the property.
“Cottrell admitted that she knew Jenkins had been Estelle’s only living relative; she acknowledged that Jenkins and the Stokeses were Estelle’s heirs. The ... plaintiffs were also aware that Jenkins and the Stokeses had paid the property taxes since Estelle’s death in 1962 until at least 1997.6
" 6An exhibit presented to the trial court indicated that, in 1997, Cottrell made a partial payment toward the taxes; in 1998 and 1999, Frank Stokes, Jr., and Cottrell each paid an amount toward the taxes; in 2000 and 2001, Stokes paid the taxes; and, from 2002 until 2005, Oscar Alexander and Lillie Robinson paid the taxes. However, the testimony regarding the payment of taxes from 1997 through 2005 was disputed and did not entirely support this exhibit.”
Stokes, 58 So.3d at 128-29.
On April 25, 2007, the trial court entered the following order:

“JUDGMENT QUIETING TITLE

“This matter was heard before the Court on a non-jury trial on December 1, 2006 and January 24, 2007, and was submitted for judgment on the pleadings, parties’ exhibits, and ore terms testimony of the parties and their witnesses. Present in Court were plaintiffs [the Greens] ...; Plaintiff [Cottrell] ...; Defendant FRANK STOKES, JR., ... and, Roderick Perdue, Esq., Guardian ad Litem representing Willie C. Alexander, thought to be deceased, and any and all unknown heirs of Estelle Haggerty Alexander.
“The court finds that the complaint, as amended, complies in all respects with the requirements of Ala.Code [1975,] § 6-6-561, in order for the court to quiet title in and to the real property described within Plaintiffs’ Complaint, and the amendments thereto, being approximately 279[3] acres of real property located in Elmore County, Alabama, (which is and has been assessed to the ‘Heirs of Estelle Alexander’ by the El-more County Revenue Commissioner)....
“The Court finds that some or all of the plaintiffs have proven that they have, since the death of Estelle Haggerty Alexander in 1962, been in actual, exclusive, open, notorious, uninterrupted, and hostile possession of the lands described in the Complaint, as amended, with the exception of those subparcels of land specifically identified hereinbelow. Such possession has been proven by evidence that, since 1962, some or all of the plaintiffs occupied the land, lived on it, maintained the improvements on it, cultivated portions of it, kept domestic livestock on it, cut timber on it, cut firewood on it, hunted on it, fished on it, operated a business on it, and buried their dead on it. The Court finds from all the evidence that the plaintiffs’ possession was sufficient for some or all of them to acquire title to the property by adverse *143 possession. Accordingly, it is the judgment of this Court that title to the lands identified in the Complaint, as amended, less and except those sub-parcels specifically identified below, is hereby quieted in the plaintiffs. The respective interests, if any, of each of the named plaintiffs shall be determined at a subsequent hearing, pursuant to this Court’s earlier Order bifurcating the trial of this case. “It is the opinion of the court that the heirs of Larenda Jenkins are entitled to a judgment quieting title to certain sub-parcels of the real property prayed for in the Defendant’s counter-complaint, as described hereinafter within Parcel A, Parcel B, and Parcel C. As to those sub-parcels, the Court finds that the Defendant, Frank Stokes, Jr., showed record title sufficient to defeat plaintiffs’ presentation of prima facie case to quiet title thereto. The Court further finds that record title to the subject property was vested in the name of Estelle Hag-gerty Alexander at the time of her death and that title passed to Larenda Jenkins at the death of Estelle Haggerty Alexander. Accordingly, the Court quiets title to those sub-parcels identified below in the heirs of Larenda Jenkins.
“The Court finds there to be no just reason to delay the final entry of this order and directs the entry of final order on the determinations made herein regarding the Defendants, and against any and all other persons and entities who may claim any interest in or to the lands described herein who have not filed an answer or intervened in this action. Accordingly, it is ORDERED, ADJUDGED, and DECREED:
“1. The right, title, interest and ownership of the Heirs of Larenda Jenkins in and to a portion of the subject property is hereby established in fee simple and forever quieted in rem and against all parties to this action, both named and unknown, all other persons and entities, and against the real property which is more particularly described as
“Parcel A: Beginning at the NW corner of Section 28, T17, R19, Elmore County, Alabama, thence South along westerly Section line approximately 1897 feet to the south right-of-way of County Road # 4 (Rifle Range Road); thence leaving said Section line and proceeding Easterly along said south right-of-way of County Road # 4 (Rifle Range Road) approximately 1080 feet to the Point of Beginning (that point being the northeast corner of property deeded to B. Gene Williams and Neva Albritton Williams by Warranty Deed dated May 15, 1981 and recorded at Card 21518); Thence South 382 feet; Thence East 430 feet; Thence Northeasterly to the south right-of-way of County Road # 4 (Rifle Range Road) a distance of approximately 385 feet; Thence Westerly along said south right-of-way of said public road 500 feet to the P.O.B. All lying in S23, T17, R19, Elmore County, Alabama.
“Parcel B: Beginning at the NE corner of Section 22, T17, R19, being the Point of Beginning for the parcel herein described; Thence South approximately 1820 feet to the North right-of-way of County Road # 4 (Rifle Range Road); Thence West along said right-of-way approximately 270 feet; Thence North approximately 1825 feet; Thence East approximately 260 feet to the Point of Beginning. All lying in the E 1/2 of the E 1/2 of the Northeast Quarter of Section 22, Township 17, Range 19, Elmore County, Alabama.
“Parcel C: Beginning at the NW corner of Section 27, T17, R19; thence *144 East approximately 209 feet to the east bank of the Tallapoosa River; thence South approximately 116 feet along the river bank to the Point of Beginning of the parcel herein described; Thence southwesterly along said river bank approximately 984 feet; thence East approximately 2508 feet; thence North approximately 952 feet; thence West approximately 2237 feet to the bank of the Tallapoosa River and the P.O.B. All lying in the N 1/2 of the NE 1/4 of S27, T17, R19, Elmore County, Alabama, and containing 52 acres, more or less.
[[Image here]]
“3. The plaintiffs are entitled to a judgment quieting title to the remainder of the subject real property, with each named Plaintiffs interest therein, if any, to be determined after further proceedings and order of this Court.”
On June 6, 2007, Frank Stokes, Jr. (“Stokes”), filed a notice of appeal to this Court from the April 25, 2007, order of the trial court. On June 20, 2007, the Greens and Cottrell filed separate notices of appeal to this Court from the order quieting title to three parcels of the property in the heirs of Larenda Jenkins. On June 29, 2007, this Court transferred all three appeals to the Court of Civil Appeals pursuant to Ala.Code 1975, § 12-2-7(6).
On March 14, 2008, the Court of Civil Appeals issued an opinion in which that court (1) affirmed the trial court’s judgment quieting title to a portion of the real property in the heirs of Larenda Jenkins and (2) reversed the portion of the trial court’s order that quieted title to the remainder of the property in the plaintiffs and remanded the case with instructions to the trial court to enter a judgment quieting title to those parcels in the heirs of Larenda Jenkins. Stokes, 58 So.3d at 125.
On May 29, 2008, Cottrell filed a petition for a writ of certiorari seeking review and reversal of the judgment of the Court of Civil Appeals in its entirety (case no. 1071204). On May 30, 2008, the Greens filed a petition for a writ of certiorari seeking review of the decision of the Court of Civil Appeals insofar as. that court reversed the portion of the trial court’s order quieting title to some of the property in the plaintiffs (case no. 1071195).
• Analysis

I. The Plaintiffs’ Contention that the Court of Civil Appeals Erred in Reversing the Portion of the Trial Court’s Order Quieting Title to Some of the Property in the Plaintiffs

The plaintiffs argue that the Court of Civil Appeals erred in reversing the portion of the trial court’s order awarding them all but three parcels of the property. Before considering the merits of this argument, we must first consider whether that portion of the trial court’s order is subject to appellate review at this stage of the litigation.
With some exceptions not applicable here,[4] “this Court is without jurisdiction to hear an appeal in the absence of a final judgment.” Championcomm.net of Tuscaloosa, Inc. v. Morton, 12 So.3d 1197, 1199 (Ala.2009) (citing Hamilton ex rel. Slate-Hamilton v. Connally, 959 So.2d 640, 642 (Ala.2006), quoting Cates v. Bush, 293 Ala. 535, 537, 307 So.2d 6, 8 (1975)); see also Ex parte Wharfhouse Rest. & Oyster Bar, Inc., 796 So.2d 316, 320 (Ala.2001) (“Without a final judgment, this Court is without jurisdiction to hear an appeal. Cates v. Bush, 293 Ala. 535, 307 So.2d 6 (1975).”). This Court will take notice of the question of subject-matter jurisdiction “ ‘at any time or even ex mero *145 motu.’ ” Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 435 (Ala.2001) (quoting Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971)). “ ‘ “When it is determined that an order appealed from is not a final judgment, it is the duty of the [appellate court] to dismiss the appeal ex mero motu.” ’ ” Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 362 (Ala.2004) (quoting Tatum v. Freeman, 858 So.2d 979, 980 (Ala.Civ.App.2003), quoting in turn Powell v. Republic Nat’l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974)).
“A final judgment that will support an appeal is one that puts an end to the proceedings between the parties to a case and leaves nothing for further adjudication. See City of Birmingham v. City of Fairfield, 396 So.2d 692 (Ala. 1981). ‘A judgment need no longer be phrased in formal language nor bear particular words of adjudication. It is sufficient if it is signed or initialed by the trial court and, in considering the entire record, it evidences an intention to adjudicate and the substance of adjudication.’ Dudley v. State Dep’t of Human Res., 555 So.2d 1121, 1121 (Ala.Civ.App.1989) (citing Rule 58(c), Ala. R. Civ. P., and Purnell v. Covington County Bd. of Educ., 519 So.2d 560 (Ala.Civ.App.1987)).”
Wharfhouse Rest., 796 So.2d at 320.
The trial court’s order quieting title does not “evidence! ] an intention” to finally adjudicate the plaintiffs’ claims with respect to the land awarded to the plaintiffs. See Wharfhouse Rest., 796 So.2d at 320. The trial court, finding “no just reason to delay,” availed itself of the provisions of Rule 54(b), Ala. R. Civ. P., to “direct! ] the entry of [a] final order on [its] determinations ... regarding the Defendants, and against any and all other persons and entities who may claim any interest in or to the lands described herein who have not filed an answer or intervened in this action.” (Emphasis added.) See Rule 54(b), Ala. R. Civ. P. (permitting the trial court under certain circumstances to “direct the entry of final judgment as to one or more but fewer than all the claims or parties” in an action). The trial court did not purport to enter a final judgment as to any other issue.
As to the plaintiffs’ interest in all but the three parcels awarded to the heirs of Larenda Jenkins, the trial court’s order in this case does not put an end to the proceedings among the parties. Rather, in concluding that the “[p]laintiffs are entitled to a judgment quieting title to the remainder of the subject real property,” the trial court reserved ruling on “each named [plaintiff’s interest therein, if any.” The trial court expressly left that issue to be adjudicated “after further proceedings and order of [the trial] [c]ourt” in accordance with the trial court’s “earlier order bifurcating this case.”
Therefore, the trial court’s judgment is not a final judgment with respect to the real property awarded to the plaintiffs by that judgment. Miller Props., LLC v. Green, 958 So.2d 850, 851 (Ala.2006) (“ ‘A final judgment that will support an appeal is one that puts an end to the proceedings between the parties to a case and leaves nothing for further adjudication.’ ” (quoting Wharfhouse Rest., 796 So.2d at 320, citing in turn City of Birmingham v. City of Fairfield, 396 So.2d 692 (Ala.1981))); City of Birmingham, 396 So.2d at 694 (“We have previously defined ‘final judgment’ as a decree which ‘ascertains and declares such rights embracing the substantial merits of the controversy and the material issues litigated or necessarily involved in the litigation.’ ” (quoting Morton v. Chrysler Motors Corp., 353 So.2d 505 (Ala.1977))).
Because the trial court’s finding that the “[t]he [plaintiffs are entitled to a judg *146 ment quieting title to the remainder of the subject real property” was not a final adjudication of the plaintiffs’ claims regarding that property, it was the duty of the Court of Civil Appeals to dismiss the appeal ex mero motu with regard those claims. Cf. Dzwonkowski, 892 So.2d at 362. Therefore, insofar as it purported to reverse the trial court’s ruling that the plaintiffs were entitled to a judgment quieting title to a portion of the property, the judgment of the Court of Civil Appeals is due to be vacated.

II. Cottrell’s Contention that the Court of Civil Appeals Erred in Affirming that Portion of the Trial Court’s Order Quieting Title to Three Parcels of the Property in the “The Heirs of Larenda Jenkins”

In case no. 1071204, Cottrell seeks reversal of the judgment of the Court of Civil Appeals insofar as that court affirmed the trial court’s judgment awarding certain real estate to “the heirs of Larenda Jenkins.”[5] We note that Cottrell seeks to quiet title to the parcels awarded to the Jenkins heirs pursuant to § 6-6-560 et seq., Ala.Code 1975.[6] Section 6-6-560 authorizes “any person” who “claims ... to own any lands or any interest therein, and is in the actual, peaceable possession of the land” to commence an in rem action “to establish the right or title to such lands or interest and to clear up all doubts or disputes concerning the same.” Ala.Code 1975, § 6-6-560.[7] Jurisdiction exists over Cottrell’s claims only if Cottrell can demonstrate that, at the time the complaint was filed, she was “in the actual, peaceable possession of the land.” Ala.Code 1975, *147 § 6-6-560.[8]
“A court is obligated to vigilantly protect against deciding cases over which it has no [subject-matter] jurisdiction....” Crutcher v. Williams, 12 So.3d 631, 635 (Ala.2008) (citing Wilkinson v. Henry, 221 Ala. 254, 256, 128 So. 362, 364 (1930)). Therefore, in reviewing Cottrell’s petition, we must consider at the outset whether, at the time the complaint was filed, Cottrell was in the actual, peaceable possession of the land that is the subject of these appellate proceedings. In considering that issue, we note that, “[o]n questions of subject-matter jurisdiction, this Court is not limited by the parties’ arguments or by the legal conclusions of the trial and intermediate appellate courts regarding the existence of jurisdiction.” Ex parte Alabama Dep’t of Human Res., 999 So.2d 891, 894-95 (Ala.2008) (citing Ex parte Smith, 438 So.2d 766, 768 (Ala.1983)).
“ ‘[O]ne is in peaceable possession as opposed to scrambling possession when at the time of the suit no other party is denying the fact of complainant’s possession.’ ” Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass’n, Inc., 947 So.2d 1031, 1039 (Ala.2006) (quoting Denson v. Gibson, 392 So.2d 523, 524-25 (Ala.1980)). “When one party does something (other than mere isolated acts not amounting to an interference with [the complainant’s] peaceable possession) which indicates that he himself claims to be in possession, the complainant’s possession ceases to be peaceable and becomes ‘disputed’ or ‘scrambling.’ ” Cobb v. Brown, 361 So.2d 1069, 1070 (Ala.1978) (citing Ford v. Washington, 288 Ala. 194, 259 So.2d 226 (1972)); see also George E. Wood Lumber Co. v. Williams, 157 Ala. 73, 77, 47 So. 202, 203 (1908) (“It is difficult to lay down any definite rule as to what is *148 a peaceable possession.... [9]t would not do to state that the mere fact that another denied the right of possession would render the possession not peaceable. The party denying the right of possession in the complainant must do something indicating that he claims to be in possession himself.... ”). “ ‘If both parties claim actual possession[¾ or are scrambling for it, then the possession is not peaceable.’” Woodland Grove, 947 So.2d at 1039 (quoting Denson, 392 So.2d at 525).
In 1965, Johnnie Mae Stokes was named the administrator of Estelle’s estate. After being named administrator, Johnnie Mae Stokes leased portions of the property that could readily be cultivated (“the leased property”). The lessees planted and harvested crops on the leased property; in addition, they hunted and fished on the leased property.[10] Frank Stokes, Jr., Johnnie Mae Stokes’s son, testified that, although written copies of many of those leases could not be located, Johnnie Mae Stokes had leased the leased property repeatedly and continuously during her administration of the estate. After Johnnie Mae Stokes died, Frank Stokes, Jr., leased the cultivatable land for farming and hunting.
Reese Davis, Jr., testified at trial that his father had rented the leased property from Johnnie Mae Stokes and Frank Stokes, Jr., for 10 consecutive years, until 2002. During that time, Davis and his father, or their sublessees, would cultivate the leased property, and Davis and his father would hunt and fish on the leased property. After Davis’s father passed away in 2002, Davis rented the leased property from Frank Stokes, Jr. However, in 2003, after the underlying action was filed, the Greens instructed Davis not to farm the leased property. Therefore, Davis did not farm the property in 2003. He did not rent the leased property thereafter.
According to the parties, the leased property was the property that the trial court awarded to “the hems of Larenda Jenkins.” In renting the leased property to others, Johnnie Mae Stokes and Frank Stokes, Jr., engaged in possessory acts that interfered with the plaintiffs’ possession of that property. See Ford v. Washington, 288 Ala. 194, 200, 259 So.2d 226, 231 (1972) (holding that a complainant’s possession is not peaceable when another party has “done something to indicate that she herself claims to be in possession of the property”). Further, it is undisputed that the Stokeses’ tenants regularly farmed and hunted on that land until some time after the plaintiffs filed the complaint in this action. Thus, at the time of the filing of this action, Frank Stokes, Jr., claimed to be, and in fact was, in actual possession of the leased property. Shannon v. Long, 180 Ala. 128, 137, 60 So. 273, 276 (1912) (quoting Southern Ry. v. Hall, 145 Ala. 224, 226, 41 So. 135, 136 (1906)) (“ ‘Actual possession, or possession in fact, exists when the thing is in the immediate occupancy of the party, or his agent or tenant....’ ”); Orso v. Cater, 272 Ala. 657, 660, 133 So.2d 864, 867 (1961) (citing Stephens v. Stark, 232 Ala. 485, 485, 168 So. 873, 874 (1936)) (“It is elementary that, as between landlord and tenant, possession of the tenant is possession of the landlord.”).
Accordingly, even if Cottrell was also in *149 actual possession[11] of the leased property at the time the complaint was filed in this action, her possession of the leased property was not “peaceable.” See Denson, 392 So.2d at 525 (“[I]f both parties claim actual possession, or are scrambling for it, then the possession is not peaceable.”); see, e.g., Cobb, 361 So.2d at 1070 (“The stipulation that appellees walked over the property, posted signs, and halted the cutting of timber by others establishes acts of possession sufficient to cause appellant’s possession to be ‘scrambling’ rather than ‘peaceable.’ Likewise, appellant’s walking over the land and having timber cut constituted acts of possession, making appellees’ possession also ‘scrambling.’ While the appellant does not have actual, peaceable possession, both she and the appellees have some possession. There is enough evidence of possession by both parties to prevent either party’s bringing suit under [§ 6-6-560].”); Smith v. Gaston, 1 So.3d 1043, 1046 (Ala.Civ.App.2008) (citing Denson, 392 So.2d at 524-25) (“Gaston’s fence indicates a claim of possession over the disputed land. Because both Smith and Gaston claimed to be in possession of the disputed land, Smith’s alleged possession was not peaceable.”).
Therefore, Cottrell is unable to meet the requirements of Ala.Code 1975, § 6-6-560, with regard to the leased property, which the trial court awarded to “the heirs of Larenda Jenkins.” See Ala.Code 1975, § 6-6-560 (authorizing in rem actions to quiet title by “any person” who “claims ... to own any lands or any interest therein, and is in the actual, peaceable possession of the land” (emphasis added)). Thus, Cottrell’s petition for a writ of certiorari is due to be quashed as to all issues contesting the affirmance by the Court of Civil Appeals of that part of the trial court’s order awarding the leased property to “the heirs of Larenda Jenkins.”

Conclusion

For the reasons stated above, we quash Cottrell’s petition for the writ of certiorari in part. We vacate the judgment of the Court of Civil Appeals insofar as, in reliance on the trial court’s Rule 54(b) certification, it reversed that portion of the trial court’s order quieting title to certain of the property in the plaintiffs and instructed the trial court to enter a judgment quieting title to that property in the heirs of Larenda Jenkins, and we remand the cause to the Court of Civil Appeals for that court to enter a judgment dismissing the appeal in part and instructing the trial court to vacate its Rule 54(b) certification as to the property it awarded to the plaintiffs and to then address the remaining issues.
1071195 — JUDGMENT VACATED IN PART AND CAUSE REMANDED WITH INSTRUCTIONS.
WOODALL, SMITH, and SHAW, JJ., concur.
LYONS, PARKER, and MURDOCK, JJ., concur specially.
STUART and BOLIN, JJ., concur in the result.
COBB, C.J., dissents.
1071204 — WRIT QUASHED IN PART; JUDGMENT VACATED IN PART; AND CAUSE REMANDED WITH INSTRUCTIONS.
*150 WOODALL, J., concurs.
SMITH, J., concurs in part and concurs in the result.
LYONS, STUART, BOLIN, PARKER, and SHAW, JJ., concur in the result.
MURDOCK, J., concurs specially in part and dissents in part.
COBB, C.J., concurs in part and dissents in part.

. The plaintiffs dispute some of the facts as set forth in the opinion of the Court of Civil Appeals. The existence of those factual disputes is not material to this opinion; therefore, the Court will not address those disputes further in this opinion.

. The reference to "six parcels” in the Court of Civil Appeals' opinion appears to be an error. The alleged constructive trust pertained only to 100 acres of the property at issue in this case.

. We note that this figure differs from the total acreage the Court of Civil Appeals said was in dispute. It is unclear from the record precisely how many acres are involved.

. See Rules 4(a) and 5, Ala. R.App. P.

. The Greens did not petition for review of this issue.

. The plaintiffs asserted in their complaint that they brought their claims pursuant to § 6-6-540, Ala.Code 1975, which governs in personam actions to quiet title. However, the trial court correctly indicated in its order quieting title that this action is governed by § 6-6-560 et seq. Additionally, in her briefs before this Court, Cottrell states that her claims were brought pursuant to § 6-6-560 et seq.

. Alabama Code 1975, § 6-6-560, also authorizes the commencement of an in rem action to quiet title
" '(2) When neither the complainant nor any other person is in the actual possession of the lands and complainant has held color of title to the lands, or interest so claimed, for a period of ten or more consecutive years next preceding the filing of the bill, and has paid taxes on the lands or interest during the whole of such period[;]
" '(3) When neither the complainant nor any other person is in the actual possession of the lands and complainant, together with those through whom he claims, have held color of title and paid taxes on the lands or interest so claimed for a period of ten or more consecutive years next preceding the filing of the bill[; or]
" ‘(4) When neither the complainant nor any other person is in the actual possession of the lands and complainant and those through whom he claims have paid taxes during the whole of such period of ten years on the lands or interest claimed, and no other person has paid taxes thereon during any part of said period.’ ”
Shelton v. Wright, 439 So.2d 55, 57 (Ala.1983) (quoting Fitts v. Alexander, 277 Ala. 372, 375, 170 So.2d 808, 810 (1965)). However, these three sets of circumstances can exist only when neither the complainant nor any other person is in actual possession of the land. In light of the undisputed facts reflected in the record regarding actual possession of the property in dispute here, and because Cottrell bases her quiet-title claim solely on rights allegedly acquired by adverse possession, these three sets of circumstances are inapplicable in this case. Cf. Cobb v. Brown, 361 So.2d 1069, 1070 (Ala.1978) (“Title may be quieted in a party under Tit. 7, § 1116 [§ 6— 6-560, Ala.Code 1975] only when that party is in actual, peaceable possession or when no one is in actual possession. Dennison v. Clai *147 borne, 289 Ala. 69, 265 So.2d 853 (1972); Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965).”).

. Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass’n, Inc., 947 So.2d 1031, 1038 (Ala.2006) ("The trial court has jurisdiction over quiet-title actions in which the plaintiff shows that he or she is in peaceable, rather than scrambling, possession of the property.”); State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999) (" ‘Standing is a necessary component of subject matter jurisdiction.’ " (quoting Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 626 (Tex.1996))); Cullman Wholesale Co. v. Simmons, 530 So.2d 727, 729 (Ala.1988) (plurality opinion) ("[T]he trial court, in the absence of a showing by the complainant that he meets one of the four situations set forth in [Ala. Code 1975, § 6-6-560], is without power to assume jurisdiction over the subject res.”); Denson v. Gibson, 392 So.2d 523, 524 (Ala.1980) ("Complainant [in a quiet-title action] must prove, inter alia, that he was in the actual or constructive possession of the property, and that his possession was peaceable as distinguished from scrambling or disputed. Hinds v. Slack, 293 Ala. 25, 299 So.2d 717 (1974). It is the character of the possession at the time the suit commenced which is decisive. Davidson v. Blackwood, 250 Ala. 263, 34 So.2d 205 (1948).”); cf. Merchants Nat’l Bank of Mobile v. Morris, 252 Ala. 566, 569, 42 So.2d 240, 242 (1949) (noting that an in rem proceeding to quiet title "is purely statutory and the [Grove] Act [which includes the statute now codified at § 6-6-560] confers upon the circuit court in equity a limited jurisdiction in which the statutory requirements must be made to appear on the record and be introduced in evidence as a support to the decree”); Buchmann Abstract & Inv. Co. v. Roberts, 213 Ala. 520, 521, 105 So. 675, 676 (1925) ("[W]e are constrained to hold that the possessory acts herein indicated on the part of respondent were sufficient as a contest of complainant’s possession so as to destroy the peaceable character thereof and constitute it a disputed, contested or scrambling one.... This conclusion destroys the jurisdiction of the court over the cause at its very threshold, and renders unnecessary a consideration of the questions which constitute any of the issues as to the contest of title.”).

. "Actual possession generally refers to the physical occupation of the land.” Woodland Grove, 947 So.2d at 1037 n. 7 (citing Hinds v. Slack, 293 Ala. 25, 28, 299 So.2d 717, 719 (1974)).

. A dispute exists as to whether Reese Davis, Jr., his father, and other lessees also hunted in other areas of the property. Our analysis does not require the resolution of that issue.

. It is undisputed that, since the 1960s, Cott-rell has not resided on any of the property at issue in this case, including the leased property. Cottrell contends that the Greens acted as her agents in possessing both the leased property and the unleased property, but the Greens dispute that contention. We find it unnecessary to resolve that particular issue at this time.