MOORE, Chief Justice.
E’Stella Alexander Webb Gottrell (“Cottrell”), on the one hand, and Johnnie Mae Alexander Green, Lillie Robinson, -Oscar C. Alexander, Bertha Mae Humphrey, Shirley Alexander, Cathy Alexander, Johnny Alexander, Jr., and Althea Alexander *663 (“the Alexander plaintiffs”), on the. other, separately petition for a writ- of certiorari reversing the Court of .Civil Appeals’ judgment overturning an. award to them of three parcels of land from the estate of Estelle Haggerty Alexander (“Estelle”). We granted certiorari review, and we now reverse and remand.'

I. Facts and Procedural History ■

In 1962, Estelle, who owned 6 parcels of land in Elmore County consisting of 270 acres, died intestate. Estelle’s cousin and nearest next-of-kin, Larenda Jenkins, was immediately vested with ownership of the land. See McCollum v. Towns, 435 So.2d 17, 19 (Ala.1983) (noting that “real- estate vests immediately in the heirs -at law,” subject to the decedent’s debts). - Living on the land at the .time of Estelle’s death were Johnny Alexander, Sr., his family, and Cottrell. Although Estelle had raised Johnny Sr. and Cottrell from infancy, they were not her children, and she never adopted them. The Elmore County Probate Court appointed Larenda Jenkins administrator of Estelle’s estate. In. 19.63 Cottrell and Johnny Sr. filed a complaint seeking title to 100 acres of Estelle’s land on the theory that Estelle had intended them to own it. Their action was: dismissed in 1975 for lack of prosecution. Cottrell moved off the property in 1965 and never lived there again.
In 1965 Larenda Jenkins died and was succeeded as administrator by her granddaughter, Johnnie Mae Stokes. ‘Stokes died intestate in 1996. Frank Stokes, Jr., Johnnie Mae’s son (“Stokes”), then assumed the duties of the administration of Estelle’s estate. Throughout this period the estate was not formally closed.' Johnny Sr. had eight children (seven of whom ■ are Alexander plaintiffs). Many-of them grew up on the land and continued to'live there after his death in 1988.
; In 2002, Cottrell and Oscar C. Alexander, one of Johnny Sr.’s sons, alleging that they were the lineal descendants and thus heirs of Estelle, filed a petition seeking to be appointed as administrators of Estelle’s, estate. After the probate court issued letters of administration, Cottrell and the Alexander plaintiffs (hereinafter referred to collectively as “the plaintiffs”) signed an agreement with a third party to sell the 270 acres for $450,000. In 2003, the plaintiffs then filed an action in the Elmore Circuit’ Court to quiet title to the land in themselves. Stokes opposed that action and presented evidence indicating that none of the plaintiffs were Estelle’s legal heirs but that he was an heir and entitled to the property through intestate descent from Larenda Jenkins. After the plaintiffs recanted their assertions of a biological relationship with Estelle, the probate court vacated' its orders appointing Cott-rell and Oscar Alexander as administrators of the estate.' The circuit court then set the quiet-title action for trial based on the plaintiffs’ newly adopted theory of adverse possession.'
Following a bench trial, the court divided the six parcels of land that constituted Estelle’s estate, finding that the plaintiffs and their ancestors had adversely possessed three parcels (“the three parcels”) by living on the land and engaging in certain activities there but that the heirs of Larenda Jenkins; as holders of legal title, •' were entitled to the other three (“the farmed 'parcels”). All parties appealed. Stokes attacked the settling of the-three parcels in the plaintiffs. Cott-rell and -the Alexander plaintiffs separately cross-appealed, seeking title to all six parcels ■ between them. This Court deflected the appeal to the Court of Civil Appeals. Holding that the plaintiffs’ possession, of the land was permissive rather than adverse, the Court of Civil Appeals, reversed the circuit court’s judgment in *664 part and instructed the circuit court that title to all six parcels should be quieted in Stokes and any other heirs of Larenda Jenkins. Stokes v. Cottrell, 58 So.3d 123 (Ala.Civ.App.2008), vacated in part sub nom., Ex parte Green, 58 So.3d 135 (Ala.2010).
This Court granted the separate petitions for a writ of certiorari filed by Cott-rell and the Alexander plaintiffs. Holding that unadjudicated issues rendered the circuit court’s judgment unappealable in part, this Court vacated the judgment of the Court of Civil Appeals reversing the award of the three parcels to the plaintiffs and remanded the case for further proceedings. Ex parte Green, 58 So.3d 135 (Ala.2010) (“Green /”). This Court also quashed in part the writ it had issued to review the judgment of the Court of Civil Appeals affirming the trial court’s award of the farmed parcels to the heirs of Lar-enda Jenkins. This Court held that Stokes’s leasing of the farmed parcels to third parties rendered the plaintiffs’ possession nonpeaceable and thus not amenable to a quiet-title action. 58 So.3d at 146-49 (citing § 6-6-560, Ala.Code 1975).
On remand from the Court of Givil Appeals, the circuit court did not revisit its original division of the land between the plaintiffs and Stokes but did hold a hearing to further allocate the three parcels, settling 50% of that land in Cottrell and the other 50% in the Alexander plaintiffs. The Alexander plaintiffs appealed, challenging the award of 50% of the three parcels to Cottrell. Stokes also appealed, seeking reversal of the award of the three parcels to the plaintiffs. Because the circuit court did not reexamine its award of three parcels to each side, the Court of Civil Appeals simply adopted its original analysis from the first appeal. Reversing the award of the three parcels to the plaintiffs, it quieted title for the three parcels in the heirs of Larenda Jenkins. The Court of Civil Appeals then dismissed as moot any review of the circuit court’s allocation of the three parcels as between Cottrell and the Alexander plaintiffs. Green v. Cottrell, 188 So.3d 656 (Ala.Civ.App.2012).
We granted the petitions of Cottrell and the Alexander plaintiffs for certiorari review of the 2012 decision of the Court of Civil Appeals.

II. Standard of Review

“Where a trial court hears ore tenus testimony, as in this case, its findings based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all the evidence and after- making all inferences that can logically be drawn from the evidence, the judgment is found to be plainly and palpably erroneous. The trial court’s judgment will be affirmed if there is credible evidence to support the judgment. Furthermore, where the trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment unless such findings would be clearly erroneous. The presumption of correctness is particularly strong in boundary line disputes and adverse possession cases, because the evidence in such cases is difficult for an appellate court to review.”
Bearden v. Ellison, 560 So.2d 1042, 1043-44 (Ala.1990) (citations omitted) (emphasis added).

III. Analysis

In Green I, we held that the plaintiffs could not maintain an action to quiet title to the farmed parcels, which the heirs of Larenda Jenkins had leased to third parties, because the plaintiffs were unable to *665 satisfy the statutory requirement that they were in peaceable possession of the-farmed parcels. See § 6-6-560, Ala.Code 1975. The plaintiffs have not sought certiorari review on this issue. Thus, the only issue for decision is whether the Court of Civil Appeals erred in overturning the circuit court’s award of the three parcels to, the plaintiffs on an adverse-possession theory.

A. Quiet-Title Analysis

When a plaintiff seeking to quiet title establishes peaceable possession, the burden then shifts to the defendant to demonstrate valid legal title. Upon that demonstration the burden shifts back to the plaintiff , to show superior title by adverse possession or a better deed. Wiggins v. Stapleton Baptist Church, 282 Ala. 255, 257, 210 So.2d 814, 816-17 (1968). Sufficient evidence exists in the record from which the circuit court could have found that the plaintiffs had peaceable possession of the three parcels at the time they filed the underlying action in 2003. The leases given by the Jenkins heirs for third parties to farm and hunt and the actual use of the land by the lessees could be interpreted to apply to the entire property, i.e., the three parcels and the farmed parcels, or to only the farmed parcels. Thus, credible evidence and reasonable inferences from that evidence supported a finding of peaceable possession, even though other evidence existed that would support a contrary conclusion. The burden then shifted to Stokes to show valid legal title to the three parcels. When Stokes provided evidence that title had vested in him by intestate succession, the burden shifted back to the plaintiffs to show that they held superior title by deed or intestacy or through adverse possession. They provided no evidence of possession of a deed to the land or vesting by intestacy. Thus, “[t]he only, other available method by which [Cottrell and] the. Alexander plaintiffs could have established superior title was through adverse possession.” Stokes, 58 So.3d at 131.

B. Adverse Possession

When the initial possession is permissive, as it was. in this case, “ ‘continued use will not ripen into adverse possession by mere lapse of time.’ ” Stokes, 58 So.3d at 132 (quoting Wadsworth v. Thompson, 912 So.2d 529, 533 (Ala.Civ.App.2005)).
“In order to change possession from permissive to adverse, the possessor must make a clear and positive disclaimer or repudiation of the true owner’s title. The possessor must give the true owner actual notice of such disavowal, or he must manifest acts or declarations of adverseness so notoriously that actual notice will be presumed.”
Calhoun v. Smith, 387 So.2d 821, 824 (Ala.1980).
The Court of Civil Appeals analyzed this issue as follows:
“We find no evidence of a repudiation or disclaimer of this permissive use preceding the filing- of the 2003 quiet-title action by the Alexander plaintiffs. The evidence establishes that the Alexander plaintiffs lived on parcel 1, maintaining only 3 to 4 acres of that 100-acre tract for their' personal use. They did not establish any fencing on the property or post any notices on the property to declare in any way that the property belonged to them. They did not notify the administrators or any other heir of Lar-enda Jenkins that they claimed the property as their own:
“Additionally, the Alexander plaintiffs were aware that the taxes assessed against the property were paid by the administrators of Estelle’s estate and then-by Frank Stokes, Jr„ from 1962 up until at least the late 1990s and. possibly *666 until 2003, when this quiet-title action was filed. The Alexander plaintiffs accepted that benefit and continued living on the land without cost until they decided to pursue a quiet-title action.
“Further, the Alexander plaintiffs were aware that the administrator .was leasing the property to third parties and that those leases applied to all the property in Estelle’s estate. In fact, the two leases included in the record demonstrated the permissive nature of the Alexander plaintiffs’ use. Johnnie Mae Stokes granted third parties the right to farm, hunt, and fish on the property but reserved to the Alexander plaintiffs the right to hunt and fish on the property as well. This permissive use was expressed in a lease agreement as late as 1993. Further, one of the lessees testified that he had run into Johnny Jr, while the lessee was on the property and that Johnny Jr. had not inquired of him why he was there and had not asked him to leave.
“Based on the record evidence, it appears that the Alexander plaintiffs knew and acknowledged that the administrators and Frank Stokes, Jr., exercised control over the property and that third parties, acting under the authority of Jenkins and the Stokeses, were within their rights to be on the property. Such acquiescence is inconsistent with the exclusive, hostile, open, and notorious possession of property required to establish adverse possession. . .
“Because the .Alexander plaintiffs’ possession of the property was permissive and because they established no evidence of repudiation or disclaimer of that permissive nature, their claim of adverse possession failed as a matter of law.” . ■
Stokes, 58 So.3d at 132-33.
 However, contrary evidence existed from which the circuit court could have found “a clear and positive disclaimer or repudiation of the true owner’s title.” Calhoun, 387 So.2d at 824. In particular, in 1963 Cottrell and Johnny Sr. sued Laren-da Jenkins in the' Elmore Circuit Court “individually and as administratrix of the estate of Estelle Alexander,” alleging that Estelle had purchased the property identified as parcel one in this case “while your complainants were minors, holding it in trust for the said complainants.” They further alleged that “your complainants are the owners of the above described real estate” and “denfied] that said Larenda Jenkins own[ed] any right, title or interest in and to, said lands in any capacity whatsoever .... ” They requested that, “upon proof of the material allegations of the bill, Your Honor will enter an order vesting the legal title to the real estate described in the Bill of Complaint in your complainants share and share alike and that by said decree Your Honor will settle the title to said lands':...”
The service of. this action upon Larenda Jenkins constituted “a clear and positive disclaimer or repudiation of the true owner’s title,” but only as to the 100 acres constituting parcel one. Jenkins demurred to the complaint. After Jenkins died in 1965, Johnny Sr. moved the court to substitute her heirs as defendants. The suit languished, perhaps because oral evidence is insufficient to establish title to land, and was dismissed for lack of prosecution in 1975. In Green I Chief Justice Cobb dissented from this Court’s vacating the Court of Civil Appeals’ judgment for lack of an appealable final judgment. Accordingly, she addressed the'merits and stated:
“In 1965, Cottrell and Johnny Alexan- - der, Sr., filed a complaint, alleging that, during her lifetime,' Estelle had pur *667 chased 100 acres of the land for their benefit and that, at the time of Estelle’s death, the property was being held in a constructive trust for them. Competing inferences may be drawn from the existence of the action and the fact that the 1965 action was dismissed for lack of prosecution. However, a finder of fact could reasonably conclude that the action manifested a disavowal of the record owner’s title sufficient-to notify the record owner that Cottrell and Johnny Sr. did not recognize the validity of the record owner’s title to at least 100 acres of the property.”
58 So.3d at 165-66.
In addition to the effect of the 1963 quiet-title action in disclaiming title, the evidence cited by the Court of Civil Appeals in support of a finding of permissive possession is not unequivocal. For instance, “payment of the property taxes by the record title holder does not prevent adverse possession of the property.” Lilly v. Palmer, 495 So.2d 522, 530 (Ala.1986). Chief Justice Cobb framed the evidence as follows:
“In addition, the plaintiffs used the property in whatever manner they pleased without accounting to anyone for their use of it and without paying rent. They lived on the property for several generations, maintained improvements on it, cultivated portions of it, drew water from it, kept domestic livestock on it, cut timber on it, cut firewood on it, hunted on it, fished on it, operated a business on it, and buried their dead on it. Until shortly before the trial of this case, a number of the plaintiffs believed themselves to be, and openly held themselves out to be, the grandchildren and heirs of Estelle Haggerty Alexander.
“One could reasonably conclude from the evidence that the plaintiffs clearly and openly held themselves out to be the rightful owners of the property, not merely permissive users.”
58 So.3d at 166.
The Court of Civil Appeals stated the ore tenus rule in its standard-of-review section, Stokes, 58 So.3d at 129, but in its analysis of the evidence did not accord the circuit court’s findings the required deference. Were we deciding-this case in the first instance, we might well rule as the Court of Civil Appeals did on the merits. However, showing due respect to the judgment of the circuit court, as the ore tenus rule requires, we conclude that credible evidence was presented to support the circuit court’s allotment to the plaintiffs of the three parcels, which included the 100-acre parcel at issue in the 1963 quiet-title action.
“[0]pposing inferences [are] to be finally resolved by the decree of the trial judge who heard. the witnesses testify and whose conclusion has the force and effect of a jury verdict. According the usual presumption of correctness to the conclusion attained by him, we would not be warranted in disturbing his finding.”
Stewart v. Childress, 269 Ala. 87, 94, 111 So.2d 8,14 (1959). See Lilly v. Palmer, 495 So.2d at 530 (noting that “it is a rare case when this Court will overturn a finding by a trial judge who hears an adverse possession case presented ore tenus- ”). .

TV. Conclusion

We reverse the judgment of the Court of Civil Appeals in' both case no. 2100920 and case no. 2101086. Our reversal of the Court of Civil Appeals’ judgment on the three parcels (case no. 2101086) revives the argument of the*Alexander plaintiffs that the trial court erred in awarding 50% of the three parcels to Cottrell (case no. 2100920).. The Court of Civil Appeals dismissed the appeal of the Alexander plain *668 tiffs in case no. 2100920 as moot because it was reversing the award of the three parcels to the plaintiffs. Accordingly, on remand of this ease the Court of Civil Appeals is to decide the issues presented in case no. 2100920.
1111006 — REVERSED AND REMANDED.
1111011 — REVERSED AND REMANDED WITH DIRECTIONS.
STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
MURDOCK and SHAW, JJ., concur in the result.
BRYAN, J., recuses himself.*