On Application for Rehearing in Case No. 2100920 and After Remand from, the Alabama Supreme Court

MOORE, Judge.
This court’s opinion of January 16, 2015, is withdrawn, and the following is substituted therefor.
This court’s prior judgment was reversed, and the cause was remanded to this court, with instructions, by the Supreme Court of Alabama. See Ex parte Cottrell, 188 So.3d 661 (Ala.2014) (reversing Green v. Cottrell, 188 So.3d 656 (Ala.Civ.App.2012)). On remand to this court, and in compliance with the supreme court’s opinion and instructions, we now affirm the trial court’s judgment in appeal no. 2100920 and appeal no. 2101086.

Background

The parties and this action have been before this court on multiple occasions. For the detailed history of this case, see Stokes v. Cottrell, 58 So.3d 123 (Ala.Civ.App.2008) (“Stokes I ”) (affirming in part and reversing in part the trial court’s judgment and remanding the cause with instructions), judgment vacated in part, writ quashed in part, and cause remanded with instructions by Ex parte Green, 58 So.3d 135 (Ala.2010) (plurality opinion in part); Stokes v. Cottrell, 58 So.3d 166 (Ala.Civ.App.2010) (“Stokes II”) (opinion on remand from the supreme court, dismissing appeals in part and remanding with instructions); and Green v. Cottrell, 188 So.3d 656 (Ala.Civ.App.2012) (“Green /”) (reversing judgment in part and dismissing appeal no. 2100920 as moot), judgment reversed and cause remanded with instructions by Ex parte Cottrell, 188 So.3d 661 (Ala.2014). The background of this case is sufficiently set forth in those previous decisions and, for the sake of brevity, will not be restated here.
In 2010, after this court remanded the cause to the trial court to address the remaining issues and to enter a final judgment, see Stokes II, the trial court conducted an evidentiary hearing on March 21, 2011; ore tenus evidence was presented at that hearing. The purpose of that hearing was to determine if E’Stella Alexander Webb Cottrell'(“Cottrell”) had acquired any interest in the three non-farmed parcels (“the three parcels”) and, if *670 so, the extent of her interest.[1] At the conclusion of the ore tenus hearing, the trial court requested that the parties submit posttrial briefs.
On May 4, 2011, the trial court entered a final judgment finding that Johnny Alexander, Sr. (“Johnny Sr.”), and then Johnnie Mae Alexander Green, Lillie Robinson, Oscar C. Alexander, Bertha Mae Humphrey, Shirley Alexander, Cathy Alexander, Johnny Alexander, Jr. (“Johnny Jr.”), and Althea Alexander (hereinafter referred to collectively as “the Alexander plaintiffs”) had jointly possessed the three parcels for the benefit of both themselves and Cott-rell; the trial court also found that Johnny Sr. and Cottrell had engaged in a joint enterprise in possessing the three parcels after the death, of Estelle Haggerty Alexander (“Estelle”) in 1962.. The trial court concluded that, as of 1982, 20 years after Estelle’s death, Johnny Sr. and Cottrell had acquired joint title to the three parcels through adverse possession. The Alexander plaintiffs and Frank Stokes, Jr. (“Stokes”), timely filed their notices of appeal.
In appeal no. 2101086, Stokes challenges the trial court’s finding that, through adverse, possession, the Alexander plaintiffs and Cottrell had established a claim to the three parcels superior to that held by Stokes, one of the heirs of Larenda Jenkins, who was Estelle’s only living, hem at the time of her death. In appeal no. 2100920,, the Alexander plaintiffs assert that the trial court erred in finding that they and Johnny Sr. had acted on behalf of Cottrell in adversely possessing the three parcels and that the trial court erred in finding the existence of a “joint enterprise” in which Johnny Sr. and Cottrell had acquired title to the three parcels through adverse possession..

Standard of Review

“Where a trial court hears ore'tenus testimony, as in this case, its findings [of fact] based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all the evidence and after making all inferences that can logically be drawn from the evidence, the judgment is found to be plainly and palpably erroneous. The trial court’s judgment will be affirmed if there is credible evidence to support the judgment. Furthermore, where the trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment unless such findings would be clearly erroneous. The presumption of correctness is particularly strong . in boundary line disputes and adverse possession cases, because the evidence in such cases is difficult for an appellate court to review.”
Bearden v. Ellison, 560 So.2d 1042, 1043-44 (Ala.1990) (citations omitted).

Appeal No. 2101086

In appeal no.' 2101086, Stokes asserts that he established superior legal title to *671 the three parcels and that the Alexander, plaintiffs and Cottrell failed to overcome that showing by establishing the necessary elements of adverse possession. He asserts that Johnny Sr. and Cottrell were first put into possession of the three parcels with permission from Estelle .and that, thereafter, their possession was. at all times permissive by the administrator of Estelle’s estate. Because Stokes’s argument is equally ápplicable regardless of how we resolve the dispute between the Alexander plaintiffs and Cottrell, we address his appeal first.
We need not address the merits of Stokes’s argument in detail because, in Ex parte Cottrdl, supra, our supreme court concluded that sufficient evidence had been presented to support the trial court’s “allotment to the [Alexander] plaintiffs [and Cottrell] of the three parcels.” 188 So.3d at 667. Thus, that conclusion is now the law of the case and is binding on this court. See Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987) (“[W]hatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.”).
The supreme court’s determination that the evidence sufficiently supported the trial court’s award of the three parcels to Cottrell and the Alexander plaintiffs disposes of all issues raised in Stokes’s appeal. Therefore, in appeal no. 2101086, we affirm the trial court’s judgment to the extent it found that Cottrell and the Alexander plaintiffs had acquired the three parcels through adverse possession.

Appeal No. 2100920

In appeal no. 2100920, the Alexander plaintiffs assert the following issues:
“I. Whether the trial court erred in determining that legal principles flowing from caselaw ‘establish that where there is an understanding between claimants of real property-that one’s possession-of the property is for the benefit of both claimants, such possession can result in the acquisition of title through adverse possession by the absentee claimant, if the occupant’s possession is with the understanding that the absentee claimant owner is a true owner, or in this case, a joint owner of the property.’ “II.- Whether the trial court was within its discretion in determining that' ... Cottrell established that Johnny Alexander, Sr., could have acted as her agent in his adverse possession of the [three parcels] of the subject land.
“III. Whether the trial court was within its discretion in finding that Cottrell’s and [Johnny Sr.’s] possession of the [three parcels] was a'joint enterprise.”
We address issues I and II together. The Alexander plaintiffs assert that neither they nor Johnny Sr. acted on behalf of Cottrell in adversely possessing the three parcels and that the law applicable to adverse possession does not support the trial court’s finding. They argue that “[v]irtually all prior reported cases of adverse possession by an absentee claimant involve the landlord-tenant relationship” and that, because she never acted as Johnny Sr.’s or their landlord, Cottrell could not obtain title to the three parcels through Johnny Sr.’s or their adverse possession of thé three parcels. We disagree.
 “It is not necessary to physically reside upon the property in order to adversely possess it.” Crowden v. Grantland, 510 So.2d 238, 239 (Ala.1987). “ ‘ “Actual possession, or possession in fact, exists when- the thing is in the immediate occupancy of the party, or his agent or tenant,” [and] is synonymous with pedis *672 possessio.’ ” Childers v. Darby, 163 So.3d 323, 328 (Ala.2014) (quoting Southern Ry. Co. v. Hall, 145 Ala. 224, 226, 41 So. 135, 136 (1906), quoting in turn 28 Am. & Eng. Ency. Law 238 (2d ed.)). See also Shannon v. Long, 180 Ala. 128, 137, 60 So. 273, 276 (1912) (same).
“What one may do personally in the matter of taking and holding possession of real estate for adverse possession purposes may be done by or through another. Thus, the requirement of actual possession of property necessary .to acquire title by adverse possession need not be met by acts of the adverse claimant but may be met through acts of another, who actually possesses and occupies the land for, and in subordination to, the adverse claimant. Accordingly, the requirement of actual possession may be met or kept fresh through possession on behalf of the adverse claimant by an agent, licensee, relative, or tenant. The fact that a permittee of an adverse claimant in possession of real estate pays no rent to the latter does not as a matter of law destroy the efficacy of such possession for the benefit of the claimant.”
3 Am.Jur.2d Adverse Possession § 20 (2013) (footnotes omitted).
The possession of property by one tenant, in common is presumed to be possession for the benefit of all the tenants in common. Bohanon v. Edwards, 970 So.2d 777, 782 (Ala.Civ.App.2007). That principle is equally applicable in adverse-possession cases, i.e., possession of property by one claiming to be a cotenant may establish title through adverse possession in all cotenants. For example, in Jones v. Rutledge, 202 Ala. 213, 80 So. 35 (1918), the brother of and cotenant with others was found to have controlled the property at issue to the exclusion of third parties sufficient to establish title to the property in himself and his cotenants through adverse possession.
In Lindsey v. Atkison, 250 Ala. 481, 35 So.2d 191 (1948), our supreme court recognized that Inez Atkison, one of 25 heirs of E. Lindsey, Jr. (“the decedent”), all of whom had acquired an equal interest in real property owned by the decedent at his death, had taken possession of the property, had made improvements to it, and had held it out as her own so as to establish title to the property through adverse possession against the remaining heirs. Our supreme court recognized that “a joint owner or tenant in common ... presumably acts for the benefit of all joint owners” but that Inez had “continued to remain in possession of said land, openly claiming the same adversely as her own, and that the [remaining] hems ... [had] had knowledge of such adverse claim.” 250 Ala. at 483, 35 So.2d at 192. Thus, Inez was deemed to have obtained title to the property as against her cotenants through adverse possession.
In Monte v. Montalbano, 274 Ala. 6, 145 So.2d 197 (1962), our supreme court recognized that the acts of one cotenant in possessing the land, paying the ad valorem taxes, and redeeming the property after a tax sale had inured to the benefit of all cotenants even though the cotenant in possession denied that she had intended to act on behalf of anyone other than herself. Our supreme court concluded that the evidence was insufficient to establish that the other cotenants had been aware that the cotenant in possession had been acting adverse to their interests and, thus, that the cotenant in possession had failed to overcome the presumption that one cotenant acts on behalf of all cotenants as to the property.[2]
*673 In support of her claim that she and Johnny Sr. had considered themselves to jointly own the parcels held by Estelle at her death (“the property”), see note' 1, supra, Cottrell pointed to a 1963 lawsuit filed by Johnny Sr. in which he sought to quiet title to the property in both- his and Cottrell’s names. It was undisputed that Cottrell had not been involved in the- decision to initiate that action and that, by naming her as a co-plaintiff in that quiet-title action, Johnny Sr. had indicated his belief that Cottrell jointly owned the property with him. ,,
Cottrell acknowledged that she had moved from the property in 1965 but that, even after she had moved from the property in 1965, Johnny Sr. had continued to discuss with her his use of. the property, i.e., his cutting of timber from the property, his allowing his children to live on the property, and his efforts to improve the property. According to Cottrell, she had agreed with Johnny Sr. as to his proposed use of the property, and, after returning to Alabama to live, she had regularly visited the property, walking it with Johnny Sr., visiting the. cemetery on the property, and “stuff of that nature.”
Cottrell testified that, after Johnny Sr.’s death in 1988, the Alexander plaintiffs, had continued to acknowledge her as a joint owner of the property and that,-just as Johnny Sr. had done, they had consulted with her about their use of the property. According to Cottrell, Johnnie Mae Alexander Green, one of the Alexander plaintiffs, had contacted her to discuss Johnny Jr.’s cutting timber from the property, and Shirley Alexander, Johnny Sr.’s daughter and one of the Alexander plaintiffs, had asked Cottrell to help her obtain a license for a mobile home Shirley wished to place on the property; According to Cottrell, Shirley had requested Cottrell’s help because Shirley had believed that Cottrell owned the property on which Shirley wished to place her mobile home.
Cottrell also testified that the Alexander plaintiffs had executed two agreements in April 2008: (1) a fee agreement with a lawyer representing them and Cottrell in connection with this quiet-title action and (2) a sales-purchase agreement regarding the proposed sale of the property in the event they obtained title to the property. In both of those documents, the Alexander plaintiffs had ’ identified Cottrell as a co-owner of the property who held an interest equal to their own.
Cottrell also relied on the pleadings initially filed in this action, in which the Alexander plaintiffs represented to the trial court that they and Cottrell had acquired joint title to the property through adverse possession. According to Cottrell, it was only after this lawsuit was initiated that the Alexander plaintiffs had denied that she held ah ownership interest in the property. ’ .
Based on the above, we conclude that the evidence sufficiently established that, during his lifetime, Johnny Sr. had acted on both his and Cottrell’s behalf in possessing the three parcels and claiming title to them. Thus, the trial court was entitled to conclude that, by 1982, 20 years after *674 Estelle’s death, Johnny Sr.. and Cottrell had acquired title to the three parcels through adverse possession.
Once Cottrell acquired title to the three parcels, her interest in that property could be divested only by a conveyance of the property or by losing it to another adverse possessor. Crowden, 510 So.2d at 240 (recognizing that, once a party acquired title through adverse possession, that “title could be divested only by [that part/s] conveying the property or by losing the property to another adverse possessor”). The Alexander plaintiffs offered no evidence to establish that Cottrell had ever conveyed her interest in the three parcels to them or to anyone else, and they neither asserted nor established that they had acquired Cottrell’s interest via adverse possession.
To the contrary, the trial court was presented with substantial evidence establishing that, as late as 2003, the Alexander plaintiffs had acknowledged Cottrell as a joint owner of the property. That the Alexander plaintiffs testified that they had acted under a mistaken belief that Cottrell was a joint owner of the property is immaterial in determining whether Cottrell obtained title to the three párcels through adverse possession. See, e.g., Dungan v. Early, 142 So.3d 1135, 1141 (Ala.Civ.App.2013) (recognizing that a claimant in an adverse-possession case who acts under a mistake of fact or law in possessing the property in issue can still acquire title to that property if the requisite elements of adverse possession are established); Hardy v. Smith, 148 So.3d 64, 71 (Ala.Civ.App.2013) (“‘Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully.’” (quoting Strickland v. Markos, 566 So.2d 229, 233 (Ala.1990))); and Reynolds v. Rutland, 365 So.2d 656, 658 (Ala.1978) (same).
Based on the evidence presented to the trial court, it appears that Cottrell has, at all times since Estelle’s death in 1962, asserted her right to a 50% interest in the property, which includes the three parcels; that, during his lifetime, Johnny Sr. recognized Cottrell as a joint owner of the property; and that, until 2003, the Alexander plaintiffs recognized. Cottrell as a joint owner of the property. Thus, any mistaken understanding or belief by the Alexander plaintiffs as to Cottrell’s legal rights is immaterial in determining that, between 1962 and 2003, Cottrell acquired title to the three parcels through adverse possession and that the Alexander plaintiffs had not thereafter divested her of that title.[3]
Based on the above, we conclude that the evidence sufficiently supports the trial court’s finding of fact that Cottrell acquired a. 50% interest in the three parcels through adverse possession.[4] See Jones v. *675 Rutledge, supra; and Monte v. Montalbano, supra. We, therefore, affirm. the trial court’s judgment to the extent it awarded Cottrell a 50% interest in the three parcels.
2100920 — APPLICATION , OVERRULED; OPINION OF JANUARY 16, 2015, WITHDRAWN; OPINION . SUBSTITUTED; AFFIRMED.
2101086 — APPLICATION FOR REHEARING IN CASE NO/. 2100920 OVERRULED; OPINION OF JANUARY 16, 2015, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. We herein adopt our shorthand references, as assigned in our previous opinions, to the parties- and to the property. We refer to all six of the parcels held by Estelle Haggerty Alexander at her death collectively as "the property." Cottrell and Johnnie Mae Alexander Green, Lillie Robinson, Oscar C, Alexander, Bertha Mae Humphrey, Shirley Alexander, Cathy Alexander, Johnny Alexander, Jr., and Althea Alexander originally asserted a claim to all six parcels, but the trial court awarded three of those parcels, i.e., "the farmed parcels" or "the leased parcels,” to Frank Stokes, Jr.; that aspect of the judgment has become final and is not at issue in these appeals. See Ex parte Green, 58 So.3d 135 (Ala.2010). We refer to the parcels at issue in these appeals as "the three parcels.” For a legal description of all six parcels, see Ex parte Green, supra.

. See also Hanna v. Ferrier, 265 Ala. 450, 453-54, 91 So.2d 700, 703 (1956) (recognizing *673 that a party who claims to have acquired title through adverse possession may establish “possession through an agent or through a licensee,” including a family member acting on behalf of the claimant); Alabama State Land Co. v. Hogue, 164 Ala. 657, 51 So. 320 (1909) (son’s possession of land with the permission of his father, who claimed the land by adverse possession, must be treated as possession by the father); and Goodson v. Brothers, 111 Ala. 589, 20 So. 443 (1896) (recognizing that a third person's acts of ownership as to property, performed with the permission of a party claiming that property, may be used to establish the claimant’s title through adverse possession).

. ..The Alexander plaintiffs assert that, in its original judgment, the trial court. identified numerous actions in support of its finding that Johnny Sr: and the Alexander plaintiffs had possessed the' three parcels and had asserted ownership of them, e.g., that they had occupied and lived on the three parcels, had . improved the three parcels and maintained livestock on them, had cut timber and firewood from them, had hunted on them, had operated a business on them, and had buried their dead on them. The Alexander plaintiffs assert that, other than burying Estelle on the property in Í962, Cottrell admitted (hat she had not personally engaged in any of those acts. Because we conclude that the trial court was entitled to find that Johnny Sr. and the Alexander plaintiffs had acted on behalf of Cottrell in possessing the three parcels, it is immaterial that Cottrell did not personally engage in those identified activities.

. Based on our resolution of the first two issues presented by the Alexander plaintiffs, we pretermit consideration of their third issue, in which they challenge the trial court's finding of a "joint enterprise” between Cott- *675 rell and Johnny Sr. and the Alexander plaintiffs,